IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVARAD CORP., a Utah corporation,<br><br>Plaintiff<br>v.<br><br>MEDIVIS, INC., a Delaware corporation,<br><br>Defendant. | C.A. No. ________________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Novarad Corporation (hereinafter "Plaintiff" or "Novarad"), by and through its counsel, hereby files this Complaint with Jury Demand against Defendant MediVis, Inc. ("Defendant" or "MediVis"). Plaintiff complains and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Novarad is a Utah corporation having a principal place of business at 3152 North University Avenue, Suite 200, Provo, Utah 84604.

2. Upon information and belief, Defendant is a Delaware corporation with its principal place of business at 20 Jay Street, Suite 312, Brooklyn, New York, New York 11201, and its registered agent in Delaware as Corporation Service Company.

3. Plaintiff brings this action under U.S. patent laws, 35 U.S.C. §§ 1 et seq.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

5. This Court has supplemental jurisdiction over any state law, or statutory and common law claims pursuant to 28 U.S.C. § 1367.

6. Upon information and belief, this Court has specific personal jurisdiction over Defendant because Defendant resides in Delaware.

7. Upon information and belief, Defendant maintains substantial, continuous contacts with the state of Delaware. Accordingly, this Court has general personal jurisdiction over the Defendant.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and § 1400 at least because Defendant resides in this jurisdiction, and because, upon information and belief, Defendant conducts business in this district directly related to the patents at issue in this case, is subject to the court's personal jurisdiction in this case, and a substantial part of the infringing activity giving rise to the Plaintiff's causes of action occurred in this judicial district.

**BACKGROUND**

9. Novarad is an industry leader in medical imaging, among other enterprise healthcare solutions.

10. Novarad has introduced a number of medical imaging products, including augmented reality ("AR") surgical tools marketed as OpenSight®, OpEyes™ and VisAR™.

11. Novarad developed its AR surgical tools to solve the complex problem of surgical accuracy, giving surgeons tools to more precisely navigate surgeries while focusing on the patient and not on a screen.

**Novarad's Intellectual Property**

12. Novarad has been awarded and is the owner of many patents relating to and covering its surgical augmented reality products. Among the patents that Novarad has been awarded and that it owns are U.S. Patent Nos. 10,945,807 (the "'807 Patent") and 11,004,271 (the "'271 Patent") (together, the "Patents-in-Suit"), attached as Exhibits 1 and 2, respectively.

13. As discussed more fully herein, the claims of the Patents-In-Suit are directed to, among other things, a method for providing augmented reality medical imaging of a patient. The medical imaging is expressly recited in the claims of the Patents-In-Suit as displayed using an augmented reality headset worn by a medical professional. In this way, the subject matter of the claims of the Patents-In-Suit is not abstract, but rather a non-abstract and significant improvement in this technical field.

14. Specifically, the Patents-In-Suit include claims directed to improvements in medical imaging, including "associating the acquired medical image to align with the viewable portion of the patient anatomy captured by the visual image camera." The subject matter of the claims of the Patents-In-Suit improves the user interface of an augmented reality system for surgery. Of this subject matter, the Patent Office stated that it "has not discovered prior art which fully teaches the method…, either in a single reference or in an obvious combination of references." In other words, the Patent Office found that the subject matter of the claims of the Patents-In-Suit are inventive and patentable.

15. The subject matter of the claims of the Patents-In-Suit further includes elements that amount to significantly more than an abstract organization and display of medical imaging. Specifically, the claims of the Patents-In-Suit amount to inventive concepts that confine the issued claims to a particular useful application.

16. Novarad has given notice to the public of the Patents-in-Suit, including with prominent marking on Novarad's marketing material and website.

**MediVis Infringes Novarad's Intellectual Property**

17. MediVis is in the business of making, using, selling, offering for sale, and/or importing into the United States software tools, including tools for AR (augmented reality) surgical navigation.

18. Upon information and belief, MediVis markets and sells various software tools that relate generally to use of augmented reality in surgery, including a software tool known as SurgicalAR (hereinafter "Accused Product").

19. Upon information and belief, MediVis has knowledge of the Patents-in-Suit prior to the filing of this Complaint, and has also had knowledge that the Accused Product infringes the Patents-in-Suit. For example, Novarad sent MediVis a letter dated July 22, 2021 ("Notice Letter"), notifying MediVis of its patents, including the Patents-in-Suit, and including allegations of infringement. Upon information and belief, MediVis received the Notice Letter because its attorney sent a response letter dated August 4, 2021, acknowledging receipt of the Notice Letter.

20. MediVis has not obtained permission from Novarad to use any of the rights attendant to the Patents-in-Suit in connection with the Accused Product.

21. By reason of MediVis's infringing acts, Novarad has suffered damage in an amount to be proven at trial. The harm to Novarad from MediVis's infringing activities is not fully compensable by monetary damages, and Novarad will continue to suffer irreparable harm unless MediVis's infringing conduct is enjoined.

22. Upon information and belief, MediVis acted in an objectively reckless manner with respect to Novarad's patent rights. Upon information and belief, MediVis has made, sold, offered to sell, and/or imported into the United States the Accused Product knowing that it was highly likely that its acts would infringe the Patents-in-Suit. As a result, MediVis has engaged in

willful infringement of the Patents-in-Suit, and Novarad is therefore entitled to treble damages, interest, costs, and attorney's fees in accordance with 35 U.S.C. §§ 284 and 285.

**FIRST CAUSE OF ACTION**
**(Infringement of the '271 Patent)**

23. Plaintiff hereby incorporates and realleges paragraphs 1-22 of this Complaint.

24. Upon information and belief, the Accused Product infringes at least one claim of the '271 Patent.

25. Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States the Accused Product, MediVis has in the past, does now, and continues to directly infringe, contributorily infringe, and/or induce others to infringe the claims of the '271 patent literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.

26. Claim 1 of the '271 Patent recites:

> A method for augmenting real-time, non-image actual views of a patient with three-dimensional (3D) data, the method comprising:
>
> > identifying 3D data for the patient, the 3D data including an outer layer of the patient and multiple inner layers of the patient; and
> >
> > displaying, in an augmented reality (AR) headset, one of the inner layers of the patient from the 3D data projected onto real-time, non-image actual views of the outer layer of the patient, the projected inner layer of the patient from the 3D data being confined within a volume of a virtual 3D shape.

27. Upon information and belief, MediVis and its customers and others have used and are using the Accused Product to perform each and every step of at least Claim 1 of the '271 patent, and at no time has Novarad granted MediVis or its customers and other users of the Accused Product permission to practice the claims of the '271 Patent. MediVis has used and is using the Accused Product to perform each and every step of at least Claim 1 of the '271 Patent

during its internal testing and operation of the Accused Product, as well as use of the Accused Product at its the facilities of its customers and users. MediVis's customers and users have used and are using the Accused Product to perform each and every step of at least Claim 1 of the '271 Patent during operation of the Accused Product at the facilities of customers and users. Attached hereto (and incorporated herein) as Exhibit 3 is a chart further describing MediVis's infringement of the '271 Patent and the direct infringement by MediVis's customers and users of the Accused Product.

28. Accordingly, MediVis and/or its customers and users of the Accused Product have infringed and are directly infringing the '271 Patent.

29. Upon information and belief, MediVis knew about the '271 Patent at least because it knew of Novarad's products and its patent marking, and had received written notice from Novarad, and MediVis knew that its actions constituted infringement of the '271 Patent because of the marking and because the letter sent by Plaintiff made MediVis aware that the Accused Product infringed one or more claims of the '271 Patent.

30. Upon information and belief, the marketing material and technical literature for MediVis's Accused Product, and MediVis employees trained in using and instructing others to use the Accused Product, instruct MediVis's customers and other users on how to use the Accused Product in a way that infringes the claims of the '271 Patent.

31. Upon information and belief, MediVis has induced and is inducing its customers and other users of the Accused Product to infringe claims of the '271 Patent.

32. Furthermore, upon information and belief, Accused Product, and the features provided by the Accused Product, are material to practicing the '271 Patent and are used by MediVis, MediVis's customers, and users of the Accused Product to practice at least claim 1 of

the ’271 Patent. MediVis provides the Accused Product to its employees, customers, and users of the Accused Product knowing that the Accused Product is especially made for use in a manner that infringes at least claim 1 of the ’271 Patent. The Accused Product does not have a substantial non-infringing use.

33. Accordingly, MediVis has contributed and is contributing to the infringement of the ’271 Patent.

34. By reason of MediVis’s infringement of the claims of the ‘271 Patent alleged herein, Novarad has suffered damage in an amount to be proven at trial. The harm to Novarad from MediVis’s infringing activities are not fully compensable by monetary damages, and Novarad will continue to suffer irreparable harm unless MediVis’s infringing conduct is enjoined.

35. Upon information and belief, MediVis acted in an objectively reckless manner with respect to Novarad’s patent rights. Upon information and belief, MediVis has made, sold, offered to sell, and/or imported into the United States the Accused Product knowing that it was highly likely that its acts would infringe the ’271 Patent, and continued to do so even after receiving the letter from Plaintiff. As a result, MediVis has engaged in willful infringement of the ’271 Patent, and Novarad is therefore entitled to treble damages, interest, costs, and attorney’s fees in accordance with 35 U.S.C. §§ 284 and 285.

**SECOND CAUSE OF ACTION**
**(Infringement of the ‘807 Patent)**

36. Plaintiff hereby incorporates and realleges paragraphs 1-22 of this Complaint.

37. Upon information and belief, the Accused Product infringes at least one claim of the ’807 Patent.

38. Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States the Accused Product, MediVis has in the past, does now, and continues to directly infringe, contributorily infringe, and/or induce others to infringe the claims of the ’807 patent literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.

39. Claim 1 of the ’807 Patent recites:

> A method for augmenting medical imaging of a patient, the medical imaging displayed using an augmented reality headset worn by a medical professional, the method comprising:
>
> > receiving a visual image of patient anatomy captured by a visual image camera, the visual image comprising a viewable portion of the patient anatomy;
> >
> > retrieving an acquired medical image associated with the patient anatomy from data storage, the acquired medical image comprising imaging acquired of one or more anatomical structures at a plurality of anatomical layers of the patient anatomy;
> >
> > associating the acquired medical image to align with the viewable portion of the patient anatomy captured by the visual image camera, wherein the one or more anatomical structures of the medical imaging at the plurality of layers are aligned with the visual image of the patient anatomy;
> >
> > retrieving an augmentation tag from data storage, the augmentation tag associated with a location in one layer of the acquired medical image, the augmentation tag identifying at least one anatomical structure of the acquired medical image found at the location; and
> >
> > projecting the acquired medical image and the augmentation tag using the augmented reality headset to form a single graphical view as an overlay to the patient anatomy viewable through a lens of the augmented reality headset.

40. Upon information and belief, MediVis and its customers and others have used and are using the Accused Product to perform each and every step of at least Claim 1 of the ’807 patent, and at no time has Novarad granted MediVis or its customers and other users of the Accused Product permission to practice the claims of the ’807 Patent. MediVis has used and is

using the Accused Product to perform each and every step of at least Claim 1 of the ’807 Patent during its internal testing and operation of the Accused Product, as well as use of the Accused Product at its the facilities of its customers and users. MediVis’s customers and users have used and are using the Accused Product to perform each and every step of at least Claim 1 of the ’807 Patent during operation of the Accused Product at the facilities of customers and users. Attached hereto (and incorporated herein) as Exhibit 4 is a chart further describing MediVis’s infringement of the ’807 Patent and the direct infringement by MediVis’s customers and users of the Accused Product.

41. Accordingly, MediVis, and/or its customers and users of the Accused Product, have infringed and are directly infringing the ’807 Patent.

42. Upon information and belief, MediVis knew about the ’807 Patent at least because it knew of Novarad’s products and its patent marking, and had received written notice from Novarad, and MediVis knew that its actions constituted infringement of the ’807 Patent because of the marking and because the letter sent by Plaintiff made MediVis aware that the Accused Product infringed one or more claims of the ’807 Patent.

43. Upon information and belief, the marketing material and the technical literature for the Accused Product, and MediVis employees trained in using and instructing others to use the Accused Product, instruct MediVis’s customers and other users on how to use the Accused Product in a way that practices the claims of the ’807 Patent.

44. Upon information and belief, MediVis has induced and is inducing its customers and other users of the Accused Product to infringe claims of the ’807 Patent.

45. Furthermore, upon information and belief, the Accused Product, and features provided by the Accused Product, are material to practicing the ’807 Patent and are used by

MediVis, MediVis's customers, and users of the Accused Product to practice at least claim 1 of the '807 Patent. MediVis provides the Accused Product to its employees, customers, and users of the Accused Product knowing that the Accused Product is especially made for use in a manner that infringes at least claim 1 of the '807 Patent. The Accused Product does not have a substantial non-infringing use.

46. Accordingly, MediVis has infringed and has contributed to the infringement of the '807 Patent.

47. By reason of MediVis's infringement of the claims of the '807 Patent alleged herein, Novarad has suffered damage in an amount to be proven at trial. The harm to Novarad from MediVis's infringing activities are not fully compensable by monetary damages, and Novarad will continue to suffer irreparable harm unless MediVis's infringing conduct is enjoined.

48. Upon information and belief, MediVis acted in an objectively reckless manner with respect to Novarad's patent rights. Upon information and belief, MediVis has made, sold, offered to sell, and/or imported into the United States the Accused Product knowing that it was highly likely that its acts would infringe the '807 Patent, and continued to do so even after receiving the letter from Plaintiff. As a result, MediVis has engaged in willful infringement of the '807 Patent, and Novarad is therefore entitled to treble damages, interest, costs, and attorney's fees in accordance with 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and award Plaintiff relief as follows:

A. A judgment that Defendant is liable to Plaintiff for infringing the claims of the Patents-in-Suit either directly and/or by the doctrine of equivalents;

B. A judgment that Defendant is liable to Plaintiff for contributory infringement and induced infringement of the Patents-in-Suit;

C. Preliminary and permanent injunctions against Defendant, its officers, agents, servants, employees, successors, assigns and all other persons in active concert or participation with any of them, enjoining them from directly or indirectly infringing in any manner the claims of the Patents-in-Suit;

D. A judgment granting Plaintiff damages adequate to compensate it for Defendant's infringement of the Patents-in-Suit, including an award of Plaintiff's lost profits due to the infringement, in amounts to be proven at trial;

E. An order finding that Defendant willfully infringed the Patents-in-Suit and that this is an exceptional case, and an award of Plaintiff's enhanced damages, costs, and attorney's fees in accordance with 35 U.S.C. § 285 or other applicable law;

F. Such other and further relief as shall seem just and proper to the Court under the circumstances.

**JURY DEMAND**

Plaintiff demands that all claims and causes of action raised in this Complaint be tried to a jury to the fullest extent possible under the United States and Delaware Constitutions.

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Novarad Corp.*

Dated: October 13, 2021